795 A.2d 715

Jack J. SCHMERLING, et al.,

v.

INJURED WORKERS' INSURANCE FUND.

No. 88, Sept. Term, 2001.

Court of Appeals of Maryland.

April 8, 2002.

436

Charles J. Piven and Marshall N. Perkins (Law Offices of Charles J. Piven, P.A.; Jeff E. Messing, all on brief) Baltimore, for Petitioner.

Alan I. Baron (Dorsey & Whitney LLP of Washington, D.C.; and Anthony J. Zaccagnini of Semmes, Bowen & Semmes, P.C., Baltimore), all on brief, for Respondent.

Kevin B. Bedell of Washington, D.C. (Pro Hac Vice), for Respondent.

BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BATTAGLIA, Judge.

This case requires us to consider a novel question of law with respect to the Maryland Wiretap Act, Maryland Code (1974, 1998 Repl.Vol., 2000 Supp.), § 10–401, *et. seq.*, of the

Courts and Judicial Proceedings Article. Specifically, this Court is tasked to decide whether the recording equipment utilized by the respondent, Injured Workers' Insurance Fund ("IWIF"), to monitor and record incoming and outgoing calls constituted "telephone equipment ... or a component thereof," within what is commonly known as the "telephone exemption" of the Maryland Wiretap Act. If IWIF's recording equipment falls within this exemption, then it is not a prohibited intercepting device under the Maryland Wiretap Act.

The exemption only applies if the equipment is "telephone equipment ... or a component thereof" *and* if the use of the telephone equipment is for a valid business purpose. Therefore, only upon a determination that respondent's recording equipment is "telephone equipment" as contemplated by the Wiretap Act, must we also consider whether the respondent's use of the recording equipment was for a "valid business purpose," thus rendering the utilization of such recording equipment unobjectionable under the Maryland Wiretap Act. Because we hold that respondent's recording equipment does not qualify as "telephone equipment" under the Wiretap Act, we need not consider whether the respondent had a valid business purpose for the use of the recording equipment.

We are asked also to determine whether the circuit court erred in failing to strike the respondent's answer to petitioners' second amended complaint when the respondent's answer failed to comply with the timeliness requirements of Maryland Rule 2–341. We hold that the circuit court did not abuse its discretion in accepting the respondent's belated answer and thus, no error occurred.

## I. Factual Background and Legal History

The respondent, the Injured Workers' Insurance Fund, is an independent but statutorily-created insurance company that primarily provides workers' compensation insurance to Maryland businesses.[1] *See* Md.Code (1991, 1999 Repl.Vol.),

---

1. IWIF is the successor to the Maryland State Accident Fund, which was created in 1914 to insure employers unable to obtain coverage in

§ 10–104 of the Labor & Employment Article; Md.Code (1991, 1999 Repl.Vol., 2000 Supp.), § 10–105(a) of the Labor & Employment Article. An internal company-wide reorganization occurred in 1995 and 1996 during which the respondent upgraded its telecommunications system. Improvements to the telecommunications system were made at various times throughout the reorganization process and included a voice mail system, an automatic call distributor, digital announcers, and the monitoring capabilities presently at issue in this case.

The respondent utilized a Meridian [2] telephone system, technically known as a Private Branch Exchange ("PBX"), which directed incoming telephone calls to specific extensions, since its procurement in 1987. The monitoring system, manufactured by Racal, was purchased in 1996 from a distributor, Simko Office Systems. Simko representatives installed the equipment at IWIF to enable the recording of calls made to and from individual telephone lines. The equipment recorded the voices of both the IWIF employee and any party to the conversation. Each Racal unit was able to monitor and record sixty-four separate lines at once; supervisors could then review calls at their convenience and retrieve calls either at random or about which complaints or problems had been reported. It is undisputed that the respondent's purpose for installing the Racal monitoring system was to evaluate and improve customer service.

---

the private sector. In 1988, the State Accident Fund was established as an independent agency, and in 1990, the State Accident Fund changed its name to the Injured Workers' Insurance Fund and its employees were removed from the State's classified service. *See* 1991 Md. Laws, ch. 8 § 2; *see also* Md.Code, (1991, 1999 Repl.Vol., 2000 Supp.), § 10–113(b)(2) of the Labor and Employment Article. IWIF is required to provide workers' compensation insurance for employers in the State, *see* Md.Code, § 10–117(1) of the Labor and Employment Article, and may also provide employer's liability insurance and pay benefits comparable to those provided federally or by another state. *See* Md.Code § 10–117(2) of the Labor and Employment Article.

**2.** At the time this dispute arose, the Meridian system was manufactured by Northern Telecom, Inc., (now known as Nortel Networks, Inc.), and the respondent's telecommunications distributor was Bell Atlantic (now operating as Verizon).

On February 25, 1999, petitioners commenced a class action against the respondent in the Circuit Court for Baltimore County for violations of the Maryland Wiretapping and Electronic Surveillance Act (hereinafter "Maryland Wiretap Act") alleging specifically that the monitoring and recording of business calls through the Racal devices was illegal. This class action complaint, however, was never served. Petitioners filed and served an Amended Class Action Complaint on April 12, 1999, seeking injunctive relief from the continuing monitoring and recording practices of the respondent and statutory liquidated and punitive damages pursuant to Maryland Code (1974, 1998 Repl.Vol.), § 10–410(a)(1) of the Courts and Judicial Proceedings Article.[3]

The parties identified the applicability of the Maryland Wiretap Act's "telephone exemption," which exempts from the definition of wiretapping devices telephone equipment used in the ordinary course of business, as a potentially dispositive issue. Therefore, the Circuit Court for Baltimore County entered a Preliminary Scheduling Order on May 26, 1999, which limited discovery to the telephone exemption issue and scheduled briefings and hearings on dispositive motions concerning this issue. Both parties moved for summary judgment on February 4, 2000—petitioners argued that the exemption did not apply while the respondent sought a judgment that the exemption did apply.

---

**3.** Section 10–410(a) of the Courts and Judicial Proceedings Article provides:

(a) *Civil liability.*—Any person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of this subtitle shall have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use the communications, and be entitled to recover from any person:

(1) Actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(2) Punitive damages; and

(3) A reasonable attorney's fee and other litigation costs reasonably incurred.

On January 18, 2000, a little more than two weeks before the scheduled deadlines for summary judgement motions, the petitioners filed another amendment to their complaint to pray for statutory liquidated damages which had been included in the initial Complaint but omitted in the First Amended Complaint. The respondent did not answer the Second Amended Complaint until February 17, 2000, and thereby failed to comply with the fifteen-day requirement of Maryland Rule 2–341.[4] On this basis, petitioners moved to strike the Answer to the Second Amended Complaint.

On March 9, 2000, the Circuit Court held a hearing on the summary judgment motions as well as petitioners' motion to strike but reserved ruling on both these issues. At a subsequent hearing, which occurred on August 24, 2000, the Circuit Court denied petitioners' motion to strike because respondent's answer to the Second Amended Complaint was a general denial and not substantially different from its Answer to the First Amended Complaint; thus, the Circuit Court found that

---

4. Maryland Rule 2–341 provides:

(a) Prior to 15 days of trial date. A party may file an amendment to a pleading at any time prior to 15 days of a scheduled trial date. Within 15 days after service of an amendment, any other party to the action may file a motion to strike setting forth reasons why the court should not allow the amendment. If an amendment introduces new facts or varies the case in a material respect, an adverse party who wishes to contest new facts or allegations shall file a new or additional answer to the amendment within the time remaining to answer the original pleading or *within 15 days after service of the amendment*, whichever is later. If no new or additional answer is filed within the time allowed, the answer previously filed shall be treated as the answer to the amendment.

(c) Scope. An amendment may seek to (1) change the nature of the action or defense, (2) set forth a better statement of facts concerning any matter already raised in a pleading, (3) set forth transactions or events that have occurred since the filing of the pleading sought to be amended, (4) correct misnomer of a party, (5) correct misjoinder or nonjoinder of a party so long as one of the original plaintiffs and one of the original defendants remain as parties to the action, (6) add a party or parties, (7) make any other appropriate change. *Amendments shall be freely allowed when justice so permits. Errors or defects in a pleading not corrected by an amendment shall be disregarded unless they affect the substantial rights of the parties.*

Md. Rule 2–341(a), and (c)(emphasis added).

no prejudice resulted from the respondent's failure to meet the fifteen-day requirement of Rule 2–341.

The Circuit Court also denied the petitioners' motion for summary judgment, granted the respondent's motion for summary judgment and ultimately entered judgment in favor of the respondent on the basis that respondent's Racal recording and monitoring equipment fell under the telephone equipment exemption of the Maryland Wiretap Act. Because the court found that "the Racal system was designed and manufactured only to work with the telephone communication system, had no independent function outside of the telephone communication system, [and] is permanently wired into the PBX in the same fashion as voicemail," the trial court ruled that the Racal system qualified as telephone equipment pursuant to the statutory exemption. Furthermore, the lower court found that the respondent used the Racal equipment for a valid business purpose in its attempts to improve customer service.

The petitioners appealed the summary judgment in favor of respondent to the Court of Special Appeals asserting that the lower court erred in ruling that the monitoring equipment was telephone equipment within the exemption of the Maryland Wiretap Act and that the court erred in accepting the respondent's untimely Answer to the Second Amended Complaint on the basis of lack of prejudice to petitioners.[5] *See Schmerling v. Injured Workers' Ins. Fund,* 139 Md.App. 470, 475, 776 A.2d 80, 83–84 (2001). The Court of Special Appeals affirmed the lower court's judgment, concluding that the Racal monitoring system was "telephone equipment" and that the use of the Racal monitoring system was in the "ordinary course of business." *Id.* at 491, 776 A.2d at 93. With respect to the respondent's belated answer in violation of Rule 2–341, the

---

5. The petitioners also argued that the Circuit Court erred when it allowed the respondent to amend several affidavits to cure alleged format deficiencies. *See Schmerling,* 139 Md.App. at 475, 776 A.2d at 84. The Court of Special Appeals disagreed and affirmed the Circuit Court's ruling. *Id.* at 499, 776 A.2d at 98. This issue was not raised in the petition for writ of certiorari to this Court and as such, will not be addressed any further.

Court of Special Appeals affirmed the lower court finding no abuse of discretion in allowing the answer to be amended.

Petitioners sought and we granted a writ of certiorari to consider the question of first impression presented in this case: whether monitoring and recording equipment can be "telephone equipment" for purposes of the statutory exemption from the prohibitions of the Maryland Wiretap Act. *See Schmerling v. Injured Workers' Ins. Fund,* 366 Md. 246, 783 A.2d 221 (2001). The petition for writ of certiorari also requested review of whether the Circuit Court erred in ruling, as a matter of law, that the respondent had a valid business purpose to sustain its uniform recording of certain telephone lines, and whether the lower court's refusal to strike the belated answer filed by the respondent in violation of Maryland Rule 2–341 was erroneous.

## II. Standard of Review

■■■■■ Appellate courts review a grant of summary judgment *de novo. See Fister v. Allstate Life Ins. Co.,* 366 Md. 201, 210, 783 A.2d 194, 199 (2001). The underlying premise of a summary judgment motion is that no dispute as to material fact exists; thus, a trial court's grant of a summary judgment motion is strictly a matter of interpreting or applying the law. *See A.J. Decoster Co. v. Westinghouse Elec. Corp.,* 333 Md. 245, 261, 634 A.2d 1330, 1338 (1994)(stating that "a trial court decides issues of law, not fact, when granting summary judgment"); *Beatty v. Trailmaster Prods. Inc.,* 330 Md. 726, 737, 625 A.2d 1005, 1011 (1993)(stating that a trial court "makes rulings as a matter of law, resolving no disputed issues of fact"). The task of an appellate court in reviewing summary judgments is to determine whether the trial court was legally correct. *See Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118, 127 (2000); *Sheets v. Brethren Mutual Ins. Co.,* 342 Md. 634, 638, 679 A.2d 540, 542 (1996); *Southland Corp. v. Griffith,* 332 Md. 704, 712, 633 A.2d 84, 87–88 (1993).

■■■■■ With respect to procedural issues, a trial court's rulings are given great deference. The determination to allow amendments to pleadings or to grant leave to amend pleadings

is within the sound discretion of the trial judge. *See Robertson v. Davis,* 271 Md. 708, 710, 319 A.2d 816, 818 (1974)(discussing Rule 320, the predecessor to Rule 2–341, and stating "whether to permit an amendment rests within the sound discretion of the trial judge"); *Prudential Sec. v. E-Net, Inc.,* 140 Md.App. 194, 231–32, 780 A.2d 359, 381 (2001); *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.,* 126 Md.App. 294, 317–18, 728 A.2d 783, 794–95, *cert. denied,* 355 Md. 613, 735 A.2d 1107 (1999). Only upon a clear abuse of discretion will a trial court's rulings in this arena be overturned.

## III. Discussion

### A. The Maryland Wiretap Act

The issue presented before this Court requires us to analyze and interpret the statutory language of the Maryland Wiretap Act. To the extent possible, it is the explicit statutory language of the Act upon which we primarily base our determination of legislative intent. *See Langston v. Langston,* 366 Md. 490, 507, 784 A.2d 1086, 1096 (2001); *Marriott Employees Federal Credit Union v. Motor Vehicle Admin.,* 346 Md. 437, 445, 697 A.2d 455, 458 (1997)(stating that where the statutory language is free from ambiguity, courts do not look beyond the language of the statute); *State v. Pagano,* 341 Md. 129, 133, 669 A.2d 1339, 1340–41 (1996)(stating that the "primary source of legislative intent is, of course, the language of the statute itself") (quoting *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 73, 517 A.2d 730, 731 (1986)). The General Assembly, as well as Congress, expressly provided definitions for most of the pivotal terms in the Act; where definitions were not explicitly provided, as was the case for the term "telephone equipment," we determine the intended scope of the term by applying the language's natural and ordinary meaning, by considering the express and implied purpose of the statute, and by employing basic principles of common sense, the meaning these words intend to convey. *See Maryland Dept. of the Env't v. Underwood,* 368 Md. 160, 175, 792 A.2d 1130, 1138 (2002)(stating that the "cardinal rule of statutory interpreta-

tion is to ascertain and effectuate the intention of the legislature")(quoting *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995)); *Graves v. State,* 364 Md. 329, 346, 772 A.2d 1225, 1235 (2001)(affirming that the statutory language "must be viewed from a commonsensical perspective"); *Blandon v. State,* 304 Md. 316, 319, 498 A.2d 1195, 1196 (1985) (indicating that the Court will "reject a proposed statutory interpretation if its consequences are inconsistent with common sense"). We review the language of the contested provision in the context of the statute as a whole and with respect to the clear purposes the legislature conveyed. *See Giant Food, Inc. v. Dept. of Labor, Licensing and Regulation,* 356 Md. 180, 189, 738 A.2d 856, 861 (1999) (quoting *Tucker,* 308 Md. at 73, 517 A.2d at 732)(stating that "a plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation"); *Prince George's County v. Vieira,* 340 Md. 651, 658, 667 A.2d 898, 901 (1995)(stating that courts may "confirm the meaning reached by reference to the words of the statute by considering the purpose, goal or context of the statute"); *Frost v. State,* 336 Md. 125, 138, 647 A.2d 106, 112 (1994)(when considering the "context" of a statute, courts may review "related statutes, pertinent legislative history and other material that fairly bears on the fundamental issue of legislative purpose or goal")(internal citations and quotations omitted).

The Maryland Wiretap Act makes it unlawful to "wilfully intercept . . . any wire, oral, or electronic communication." Md.Code (1973, 1998 Repl.Vol., 2000 Supp.), § 10–402(a)(1) of the Courts and Judicial Proceedings Article.[6] The Wiretap Act defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Md.Code (1973, 1998 Repl.Vol.), § 10–401(3).

The contentious issue in the present case is, of course, whether the respondent's conduct could be categorized as an

---

**6.** Unless otherwise signified, all references to the Maryland Code are to the Courts and Judicial Proceedings Article.

"interception" under the Maryland Wiretap Act. That the respondent acquired the content of countless communications is undisputed; whether this acquisition was *through the use of* an "electronic, mechanical, or other device," however, is ardently disputed and depends entirely upon whether, as a matter of law, respondent's Racal recording equipment is such an intercepting device. An "electronic, mechanical or other device" is defined, in relevant part, as "any device ... *other than* [a]ny telephone or telegraph instrument, equipment or other facility for the transmission of electronic communications, or any component thereof" that is "furnished by the subscriber or user for connection to the facilities of the [telecommunications] service and used in the ordinary course of its business." [7] Md.Code, § 10–401(4)(i)(a)(emphasis added). Thus, the default rule is that the device is an intercepting device forbidden by the Maryland Wiretap Act. In its simplest terms, the statutory exception to this blanket prohibition is for telephone equipment (or component thereof) used in the ordinary course of business. Both criteria must be met to satisfy the "telephone exemption" and each will be addressed independently, to the extent necessary.

Prior to reviewing the dual prongs of the "telephone exemption," we must note that when interpreting and applying the

---

**7.** The definition of "electronic, mechanical, or other device" in its entirety is:

any device or electronic communication other than:

(i) Any telephone or telegraph instrument, equipment or other facility for the transmission of electronic communications, or any component thereof, (a) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by the subscriber or user for connection to the facilities of the service and used in the ordinary course of its business; or (b) being used by a communications common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties; or

(ii) A hearing aid or similar device being used to correct subnormal hearing to not better than normal.

Md.Code, § 10–401(4).

Maryland Wiretap Act, federal jurisprudence is both useful and applicable because our Act was modeled extensively after its federal counterpart, Title III of the Omnibus Crime Control and Safe Streets Act (hereinafter "Title III"), 18 U.S.C.S. §§ 2510–2522 (2000). *See Miles v. State,* 365 Md. 488, 507, 781 A.2d 787, 798 (2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1175, 152 L.Ed.2d 118 (2002)(stating that Title III, which set forth minimum standards for protections against interceptions of communications, was the model for Maryland's Act); *State v. Bailey,* 289 Md. 143, 151, 422 A.2d 1021, 1026 (1980)(acknowledging the Maryland's Wiretap Act is an "offspring" of Title III).[8]

While modeling the Maryland Wiretap Act after Title III, our State Legislature unequivocally has demonstrated its in-

---

**8.** Under the Federal Act, the definition of "electronic, mechanical, or other device" is:

any device or apparatus which can be used to intercept a wire, oral, or electronic communication *other than—*

(a) *any telephone or telegraph instrument, equipment or facility, or any component thereof,* (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or *furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business;* or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;

(b) a hearing aid or similar device being used to correct subnormal hearing to not better than normal;

*See* 18 U.S.C. § 2510(5)(emphasis added). Compare the same definition in the Maryland Wiretap Act. *See supra* note 4. The definition of "electronic, mechanical, or other device" in Title III is substantively similar to the Maryland Act, with one exception. The Maryland Wiretap Act provides that an "electronic, mechanical, or other device" is "any device ... other than [a]ny telephone or telegraph instrument, equipment or other facility *for the transmission of electronic communications,* or any component thereof ..." *see* Md.Code, § 10–401(4), while the Federal Act lacks the qualifying phrase "for the transmission of electronic communications." *See* 18 U.S.C. § 2510(5). The influence of this qualifying phrase on the provision's preceding terms was the subject of much dispute between the parties and will be discussed in further detail, *infra.*

tent to create an Act more protective of privacy interests than that which is promoted by Title III. *See Miles,* 365 Md. at 508, 781 A.2d at 798; *Derry v. State,* 358 Md. 325, 343–44, 748 A.2d 478, 487–88 (2000)(noting that Maryland's Act, while very similar to the Federal Act, actually provides more protection from wiretapping than does the Federal Act). As Judge Harrell declared in *Standiford v. Standiford,* 89 Md.App. 326, 598 A.2d 495 (1991), *cert. denied,* 325 Md. 526, 601 A.2d 1101 (1992), while on the Court of Special Appeals, "[t]he alterations that were made [to Title III] by the General Assembly before enacting the Maryland Act were obviously designed to afford the people of this State a greater protection than Congress provided in Title III." *Standiford,* 89 Md.App. at 334, 598 A.2d at 499.

Under Maryland law and contrary to federal law, for example, interception of communications is only authorized if consent of *all* parties to the interception is obtained. *Miles,* 365 Md. at 508, 781 A.2d at 798 (noting that before a communication may be recorded or intercepted, Maryland requires consent of all parties); *Perry v. State,* 357 Md. 37, 60–62, 741 A.2d 1162, 1175–76 (1999)(noting the longstanding interest in Maryland in protecting the conversations of private individuals); *Mustafa,* 323 Md. 65, 74, 591 A.2d 481, 485 (1991) ("[t]he two-party consent provision of the Maryland Act is aimed at providing greater protection for the privacy interest in communications than the federal law."). Requiring the consent of all parties is one example of the Legislature's intent to establish strict protections for the privacy interests of the citizenry-it is with this intent in mind that we must consider the scope of the telephone exemption.

### B. "Telephone Equipment . . . or Components Thereof"

To fall within the telephone exemption, and thus be used legally, the Racal recording device must be "telephone . . . equipment . . . or any component thereof." *See* Md.Code, § 10–401(4). Specific to this exemption, compelling legislative history exists, particularly from the amendments to the feder-

al wiretapping laws upon which our State's amendments were based, *see* SENATE JUDICIAL PROCEEDINGS COMMITTEE, 1998 GENERAL ASSEMBLY OF MARYLAND, BILL ANALYSIS FOR SENATE BILL 679 ("MD SEN. JUD. PRO. COMM. ANALYSIS-BILL 679"), which specifies that the wiretapping laws, including the telephone exemption, were amended "in light of dramatic changes in new computer and telecommunications technologies." *See* U.S. SENATE REPORT NO. 99–541 at 1 (1986)("S.REP. NO. 99–541"); *see also* 1988 Md Laws. ch. 607. Congress passed the Electronic Communications Privacy Act ("ECPA") in 1986 for the primary purpose of extending privacy protections given the new technology that had developed since the original enactment. *See* S. REP. NO. 99–541 at 1. In 1988, the Maryland General Assembly followed suit and adopted legislation which conformed to the Federal Act. *See* MD SEN. JUD. PROC. COMM. ANALYSIS-BILL 679 (stating that the Maryland amendments were based upon the Model Act developed by the Department of Justice for the states to use in "preparing and enacting conforming Electronic Surveillance Legislation"). The reasons for these changes and the discussion surrounding the respective adoptions at the Federal and State level provide great insight into the purpose and scope of the telephone exemption.

The Federal ECPA was drafted in response to new and developing technologies which appeared to impact an individual's privacy interests and in response to the change in the economic or market structure for communications providers: "[Title III] has not kept pace with the development of communications and computer technology. Nor has it kept pace with changes in the structure of the telecommunications industry." S. REP. NO. 99–541 at 2. Thus, ECPA accomplished two things: (a) it modified *who* could supply telephone equipment or telecommunications services and, (b) it made Title III *more restrictive* because it expanded the *scope* of the *prohibited* interceptions to include electronic communications, rather than just wire or oral communications. The Maryland Bill

accomplished equivalent tasks "to bring it in line with ... new technological developments and changes in the structure of the telephonic communications industry." *See* MD SEN. JUD. PROC. COMM. ANALYSIS-BILL 679.

First, with respect to modifying who could *supply* telecommunications *equipment* under the exemption, the federal amendments acknowledged the changes in the telecommunications industry by eliminating the "communications common carrier" language from the statute, and in its stead employed "provider of wire or electronic communication service." S. REP. No. 99–541 at 2–3, 55. Furthermore, the amendments undisputably recognized that *equipment* might be provided by institutions other than the providers of telecommunication *services,* as is seen by the addition of the alternative "furnisher" language in 18 U.S.C. 2510(5) and Maryland Code, § 10–401(4)(i). The Wiretap Act exemption now permits telephonic equipment to be furnished by the user/subscriber for connection to the communications service. *See* S. REP. No. 99–541 at 55 (the exemption now applies to "any telephone ... or any component thereof ... furnished by such subscriber or user for the connection to the facilities of such [wire or electronic communication] service and used in the ordinary course of its business"); *accord* MD SEN. JUD. PROC. COMM. ANALYSIS-BILL 679. It is under this alternative that petitioners' claim proceeds.

With respect to the *scope* of the equipment covered, the intent of Congress and the General Assembly was, to a certain extent, to make the telephone equipment exemption *more restrictive* because the definition of a prohibited interception now encompassed electronic communications as well as oral and wire communications. *See* 1988 Md. Laws ch. 607. While the telephone exemption was altered to include "equipment or *other* facility *for the transmission of electronic communications,"* this was, again, only in response to the changes in the telecommunications industry, i.e. the increased number of entities that may provide the increased types of communica-

tions services (telephone, email, etc.) and the increased means of communicating.[9] *See id.* Both Congress and the General Assembly specifically deleted the "common communications carrier" provision and in its place used "providers of wire or electronic communication service" and permitted that the equipment utilized to channel these services could be not only furnished by the "providers of wire or electronic communication" but also "furnished by the subscriber or user for connection to the facilities of the service and used in the ordinary course of its business." *Id.; see also* S. REP. No. 99–541 at 2–3, 55. Except in its need to make allowances for the changes in the telecommunications industry, Congress did not otherwise increase the scope of the equipment subject to the

---

**9.** We digress to note the significant statutory interpretation battle that ensued at the trial level with respect to the phrase "for the transmission of electronic communications" in the Maryland Wiretap Act's definition of "electronic, mechanical, or other device." In relevant part, again, that provision states that an "[e]lectronic, mechanical or other device" is:

any device or electronic communication other than:

(i) Any telephone or telegraph instrument, equipment or *other* facility *for the transmission of electronic communications,* or any component thereof . . . .

Md.Code § 10–401(4)(emphasis added). We agree with the interpretation by the Court of Special Appeals that the phrase "for the transmission of . . ." applies only to the words or phrase immediately preceding—in this case, "facility." *See* 139 Md.App. at 495–498, 776 A.2d at 95–97 Such an interpretation is consistent with the general rules of statutory construction with respect to qualifying clauses. *See Underwood,* 368 Md. at 175–76, 792 A.2d at 1139 (noting that the "generally recognized rule of statutory construction [is] that a qualifying clause ordinarily is confined to the immediately preceding words or phrase-particularly in the absence of a comma before the qualifying phrase . . .")(quoting *Sullivan v. Dixon,* 280 Md. 444, 451, 373 A.2d 1245, 1249 (1977)).

The Court of Special Appeals's analysis, however, stopped too soon. While the qualifying clause only affects the immediately preceding word, the use of the word "other" before "facility" indicates that the "facility" is *of the same kind as* "equipment" and "instrument." As petitioner points out, it would be nonsensical to use the word "other" to modify "facility" if the terms did not have some relation to each other. Therefore, while we agree with the Court of Special Appeals that the prepositional phrase, "for the transmission of . . ." only modifies "facility," we agree with petitioners that the use of the word "other" connotes a similarity in the types of equipment listed.

exemption.[10]

Thus, in the case *sub judice,* we proceed with the understanding that the goals of Congress and the General Assembly were to bring Title III and the Maryland Wiretap Act, respectfully, in step with the increased technological changes and the new risks of intrusion these changes bring. *See* S. REP. No. 99–541 at 2 (stating that the "new methods of communication and devices for surveillance has expanded dramatically the opportunity for [privacy] intrusions"). Contrary to respondent's arguments, we do not believe that legislative history of the amendments to the Wiretap Acts, both Federal and State, indicate any intention, whatsoever, to extend the telephone exemption to encompass the wiretapping instruments used by the respondent. As the United States Court of Appeals for the First Circuit similarly stated in *Williams v. Poulos,* 11 F.3d 271 (1st Cir.1993), "[t]he legislative history makes it apparent that the 1986 amendments were aimed at *strengthening* the statute by updating it to reflect nearly twenty years of telecommunications advances. Despite defendants' contrary urgings, there is absolutely no evidence in this history suggesting that Congress meant to expand the parameters of the business extension exception so as to embrace almost all wiretapping equipment." *Id.* at 280 n. 13 (internal citations omitted)(emphasis in original).

We are also mindful that this is a case of first impression in Maryland; we have not examined whether the use of recording equipment to monitor employees who interact with customers by telephone is a violation of the Maryland Wiretap Act. As such, case law from jurisdictions which have considered the permissibility of using similar equipment pursuant to

---

**10.** While the equipment covered by the telephone exemption could now be provided by someone other than the "common carrier," the equipment still must be used for connection "to the facilities of a service provider." *See* U.S. Senate Report 99–541 at 13. The monitoring and recording equipment utilized by the respondent was unrelated to any connection to the communications service provider, unlike, for example, devices such as voice mail, speaker phones, or extension phones which are related to the connections to the communications provider.

similarly enacted wiretapping laws may help guide our ultimate conclusion, the caveats being, as we stated previously, that the legislative intent for the wiretapping statutes is sufficiently discernable and that Maryland has professed a heightened interest in the privacy of its citizens, as witnessed by the more restrictive nature of our Wiretap Act. Our Court's protections of the privacy sought by the Legislature should similarly be regarded.

Courts have employed various methods of defining or discerning that which is encompassed by the term "telephone equipment." Some courts have focused on the entity that designed or sold the add-on equipment, *see e.g. Epps v. St. Mary's Hosp. of Athens Inc.*, 802 F.2d 412, 415–16 (11th Cir.1986)(dispatch console installed by telephone company considered "telephone equipment"); *James v. Newspaper Agency Corp.*, 591 F.2d 579, 581 (10th Cir.1979)(monitoring device installed by telephone company was implicitly considered "telephone equipment"), and some have focused on the degree of integration, *see e.g. Deal v. Spears*, 980 F.2d 1153, 1157–58 (8th Cir.1992)(recording device was not telephone equipment within the meaning of the exemption because it was not purchased from the telephone company and it was connected to an extension phone and not directly to the telephone line); *O'Sullivan v. NYNEX Corp.*, 426 Mass. 261, 687 N.E.2d 1241, 1245 (Mass.1997)(recording system designed for and used by telephone company did not require connections to an extra telephone line); *Dillon v. Massachusetts Bay Transp. Auth.*, 49 Mass.App.Ct. 309, 729 N.E.2d 329, 335 (2000), *cert. denied*, 432 Mass. 1105, 733 N.E.2d 1067 (Mass.2000)(recording devices directly integrated into phone lines on which they depended in order to function were "telephone equipment"). To a certain extent, these factors may assist a court in determining whether the devices qualify as "telephone equipment;" overall, however, we believe these factors are unsatisfactory.

We agree with courts that have taken a more functional approach to this determination. That is, to be deemed telephone equipment, the equipment must further the use of or functionally enhance the telecommunications system. *See*

*Sanders v. Bosch Corp.,* 38 F.3d 736, 740 (4th Cir.1994)(stating that "[t]he voice logger in no way furthers the plant's communication system"); *Williams,* 11 F.3d at 280 (monitoring system "is precisely the type of intercepting device Congress intended to regulate heavily when it enacted Title III").

 The utility of the add-on equipment must have some relation to the enhancement of the communication system. The United States District Court for the District of New Jersey succinctly described the type of add-on equipment that would functionally enhance the telecommunications system as "instruments [which have] a positive impact on the efficiency, clarity, cost, or any other factor by which one would measure the effects on a communications system." *See Pascale v. Carolina Freight Carriers Corp.,* 898 F.Supp. 276, 281 (D.N.J. 1995). Thus, we measure the applicability of the exemption by the functional utility of the equipment and its ability to further the use of the telecommunications system.

 This is consistent with our interpretation of "electronic, mechanical or other device" in *Adams v. State,* 289 Md. 221, 424 A.2d 344, (1981). In *Adams,* we considered whether a witness's telephonic identification of the defendant through the use of an extension phone in the police station violated the Maryland Wiretap Act. *Id.* at 222, 424 A.2d at 345. We held that the use of extension phones was exempted from the statute under the telephone exemption. *Id.* at 229, 424 A.2d at 348. While not explicitly so stating, we did consider the functional enhancement that resulted from an extension phone device. We stated that the extension phone "was furnished to the subscriber in order that the same communication may be received or transmitted at the same time by more than one person," *id.* at 227, 424 A.2d at 347, and characterized the extension phone as similar in nature to a speaker phone, which would allow anyone in the room to hear the communication. *See id.* at 228–29, 424 A.2d at 348. Thus, a speaker phone and an extension phone *further the use* of the telecommunications equipment, in that they increase the ability of the phone equipment to accommodate more parties to the communica-

tion. Furthermore, in concluding that the extension phone was "telephone equipment" we noted that the extension phone was not an additional device attached to the telephone, and specifically, it *"was not a device placed on the line in order to receive the communication during its transmission."* *Id.* at 227, 424 A.2d at 347 (emphasis added). The Racal equipment, however, *is* such a device. In fact, it is precisely the type of device intended to be restricted under the wiretapping statutes.

The respondent argued, and the Court of Special Appeals agreed, that the Racal monitoring and recording equipment was "designed to support a function related to the effectiveness of the telecommunications system." 139 Md.App. at 489, 776 A.2d at 92. We disagree. The recording devices in no way increased the effectiveness of the telecommunications system; it may have increased the effectiveness of the monitoring and training of the IWIF employees in their interactions with the customers on the telephone, but the *telecommunications equipment itself was not improved, enhanced, or furthered by the addition of the monitoring and recording devices.* The efficiency, clarity and cost of the respondent's Meridian telephone system were not positively affected by the procurement and utilization of the Racal devices.

The Court of Special Appeals erroneously emphasized certain factual characteristics of the Racal system in support of its conclusion that the Racal system qualified as telephone equipment. The intermediate appellate court found that the recorders were designed and manufactured for use as integrated components of a telecommunications system to provide monitoring and recording for that system. *See Schmerling,* 139 Md.App. at 488, 776 A.2d at 91. The court further emphasized that the Racal equipment was "highly specialized, expensive hardware." *Id.* at 489, 776 A.2d at 91. That an intercepting device is manufactured to be an integrated component of a larger system, and that the device is highly technical and expensive does not, *per se,* establish that the equipment is telephone equipment under the Act. Similarly, simply because

the recorders "have no use outside of their integrated functioning in IWIF's system" and "their connections are indistinguishable from those for the other [IWIF] hardware," does not mean they automatically become telephone equipment or a component thereof. *Id.* at 489, 490, 776 A.2d at 92, 93. The equipment must enhance the functional use of the communications system rather than merely containing indistinguishable connections from the main system.

Respondents believe that so long as a device is made and sold commercially, connected directly to the phone lines and deeply integrated into the users telephone system, it should be considered telephone equipment or a component thereof. *See e.g. Sanders,* 38 F.3d at 744 (Widener, J., concurring in part, dissenting in part). Such a standard, however, would render the first prong a virtual nullity—the only consideration would be whether the interception was for a valid business purpose. This is certainly not what the Legislature intended.

Again, in considering the functionality of the device at issue, it is clear that the Racal system is only capable of *monitoring* telephone *transmissions.* By respondent's admission and the Court of Special Appeals's agreement therewith, the Racal system does nothing other than monitor and record, it does not enhance communication or advance the efficient use of the telecommunications. *See Schmerling,* 139 Md.App. at 479, 776 A.2d at 86. These devices cannot be considered "telephone equipment" because, simply put, the Racal recorders do not contribute to the functionality of the phone system in that they do not relate to the facilitation of communication; thus, the exemption cannot apply.

## C. Ordinary Course of Business

As we discussed *supra,* to fall within the telephone exemption, and thus not be deemed an intercepting device, the equipment must satisfy two criteria: (1) the equipment must be a "telephone ... instrument, equipment or other facility for the transmission of electronic communications, or any component thereof"; and (2) the equipment must be "used in the

ordinary course of [the subscriber's or user's] business." Because we hold that the Racal recording equipment does not fall within the statutory telephone exemption, it is an intercepting device prohibited by the Maryland Wiretap Act and we need not reach the second prong.

## D. Rule 2–341 Violation

 Turning now to petitioners' contention that the lower court erred in accepting the respondent's belated Answer to the Second Amended Complaint, we hold that the trial court properly exercised its discretion in allowing the answer. Amendments to pleadings are to be "freely allowed when justice so permits," *see* Md. Rule 2–341(c), and shall only be denied if "prejudice to the opposing party or undue delay results." *Robertson,* 271 Md. at 710, 319 A.2d at 818. Having found that a comparison of the two pleadings demonstrated the substantial similarities between the original and amended answer, the court ruled that the petitioners were not prejudiced by the delay. We agree. The only remarkable variation to which the respondent might answer was the petitioners' amended prayer for statutory liquidated damages, in addition to the relief already sought. Respondent previously had generally denied the allegations and prayers for relief, and did so similarly, again, with respect to the prayer for statutory liquidated damages. Therefore, we agree with the Circuit Court and the Court of Special Appeals that the petitioners suffered no prejudice from the belated filing of the Answer, *see Schmerling,* 139 Md.App. at 498–99, 776 A.2d at 97–98, and we affirm the judgment of the Court of Special Appeals that the trial court was well within its discretion to so conclude. *Id.* at 498, 776 A.2d at 97.

## IV. Conclusion

We reverse the Court of Special Appeals's holding regarding the application of the telephone exemption to the respondent's recording and monitoring equipment. We affirm the intermediate appellate court's holding with respect to Maryland Rule 2–341.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.*