846 A.2d 1121

**Janet SMITH, et al.**

v.

**CITY OF BALTIMORE.**

**No. 2588, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

April 15, 2004.

Alan Hilliard Legum, Annapolis, for appellant.

Justin J. King (Thurman W. Zollicoffer, Jr., City Solicitor, Gwen B. Trombley, Asst. Solicitor, on brief), for appellee.

Argued before DEBORAH S. EYLER, KRAUSER, LAWRENCE F. RODOWSKY (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, J.

The Circuit Court for Baltimore City granted summary judgment to the Mayor and City Council of Baltimore ("City"), the appellee, in a wrongful death and survival action brought against it by Janet Smith and Cheryl Holland, the appellants. On appeal, the appellants contend the court's ruling was legally incorrect. For the following reasons, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

This case stems from a fatal accident that happened on September 14, 2000, at the intersection of Fayette and Caroline Streets in Baltimore City. Buster Holland, the appellants' father, was walking south on Caroline Street when he reached the northwest corner of that street's intersection with Fayette Street. At the time, the pedestrian crossing signal on the southwest corner of Fayette and Caroline Streets was approximately 90 degrees out of alignment. Instead of facing

north, the signal was facing east, so that a pedestrian taking Mr. Holland's route would be unable to see it.

Mr. Holland stepped off the northwest corner of the intersection, entered the crosswalk on Fayette Street, and walked across Fayette, toward the southwest corner of Fayette and Caroline Streets. Although Mr. Holland could not see the pedestrian crossing signal, he could see that the traffic light for Caroline Street was green, in his favor. As Mr. Holland reached the center of Fayette Street, however, the traffic light turned red. Upon noticing that the light had changed, Mr. Holland reversed course and attempted to return to the northwest corner. A westbound car in the southernmost lane on Fayette Street stopped to let him pass. At the same time, a second car, traveling in the same direction and lane as the first, approached the intersection.

The second car was driven by Raphael Saint Patrick Hubbins. Mr. Hubbins, unaware that the car in front of him had stopped because Mr. Holland was in the crosswalk, accelerated around the stationary car, into the northernmost lane of Fayette Street and the intersection where Mr. Holland was walking. Mr. Hubbins did not see Mr. Holland until it was too late; he skidded through the crosswalk and struck Mr. Holland, injuring him critically.

Police and fire department personnel responded, and an accident report was completed. Mr. Holland was transported by ambulance to The Johns Hopkins Hospital. On January 16, 2001, he died from his injuries.

On August 23, 2001, in the Circuit Court for Baltimore City, the appellants, who are Mr. Holland's adult daughters, filed suit individually and as the personal representatives of Mr. Holland's estate against the City, stating a survival action and a wrongful death action.[1] They alleged that the City had breached its duty to use reasonable care in maintaining the pedestrian crossing signal on the southwest corner of Fayette

---

1. Before filing suit, the appellants reached a settlement with Mr. Hubbins and his insurance carrier.

and Caroline Streets, and that, as a result, Mr. Holland was fatally injured.

On September 21, 2001, the City answered the complaint and filed a third-party complaint against Mr. Hubbins. Following a period of discovery, on November 1, 2002, the City filed a motion for summary judgment, supporting memorandum, and exhibits, including a witness's affidavit, both plaintiffs' and defendant's answers to interrogatories, and an excerpt from the deposition of an accident reconstructionist. The City argued that there was no admissible evidence to show that it had had actual or constructive notice of the misaligned pedestrian crossing signal, and therefore that it had been under a duty to repair the signal. The City also argued that the misaligned signal was not the proximate cause of Mr. Holland's injuries—Mr. Hubbins was—and that Mr. Holland was contributorily negligent, as a matter of law. The appellants opposed the motion.

The evidence presented to the court on summary judgment showed that the City does not conduct routine inspections of its roads to learn whether its traffic signals, including pedestrian crossing signals, are functioning properly. Instead, the City relies on reports from citizens (including police officers and others who are on the City streets often by virtue of their work) to learn of malfunctions. The evidence also showed that some City employees know that occasionally pedestrian crossing signals will be struck by passing vehicles and become misaligned.

The court held a hearing on the City's motion for summary judgment on December 27, 2002. At the conclusion of the hearing, the court granted the City's motion, on the issue of notice. In its ruling, the court explained:

I think everyone is in agreement that the City had no actual notice of the misalignment of this pedestrian traffic signal. Clearly the issue is one of constructive notice and there is no evidence in the record—I think the parties also agree—that there is no evidence in the record of how long the pedestrian signal had been misaligned.

It is the view of this court, in the absence of that evidence, the plaintiff cannot prove constructive notice, and I will note that there is no history of problems with the light. Plaintiff has not been able to point the court to any authority for the position that the [C]ity has constructive notice for failing to do any regular, systematic inspections. I think the plaintiff's argument here only works if the problem with the light was one of long standing and the City didn't find it after a prolonged period of time. However, here again, since there is no evidence in the record of how long the signal was misaligned, the plaintiff can't make that argument and can't impose upon the City constructive notice.

I am not deciding this motion on the basis of proximate cause, I am deciding it strictly on the basis of lack of notice and for that reason, I am granting the City's Motion for Summary Judgment.

The appellants noted a timely appeal to this Court.

We shall recite additional facts as necessary to our discussion of the issues.

## STANDARD OF REVIEW

We review an order granting summary judgment *de novo.* *Beyer v. Morgan State Univ.,* 369 Md. 335, 359, 800 A.2d 707 (2002); *Schmerling v. Injured Workers' Ins. Fund,* 368 Md. 434, 443, 795 A.2d 715 (2002); *Fister v. Allstate Life Ins. Co.,* 366 Md. 201, 210, 783 A.2d 194 (2001).

Under Rule 2–501, the circuit court may grant summary judgment if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Beyer, supra,* 369 Md. at 359–60, 800 A.2d 707; *Schmerling, supra,* 368 Md. at 443, 795 A.2d 715; *Lippert v. Jung,* 366 Md. 221, 227, 783 A.2d 206 (2001). A fact is material when its resolution will somehow affect the outcome of the case. *Matthews v. Howell,* 359 Md. 152, 161, 753 A.2d 69 (2000) (quoting *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985) (citing *Lynx, Inc. v. Ordnance Prods., Inc.,* 273 Md. 1, 8, 327 A.2d 502 (1974))).

■ On appeal of the grant of a motion for summary judgment, our first inquiry is whether there was a genuine dispute as to a material fact. See *Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118 (2000). If the material facts were not disputed, or were assumed favorably to the non-moving party, we next inquire whether, on the applicable law, the moving party was entitled to judgment. *Beyer, supra,* 369 Md. at 360, 800 A.2d 707; *Okwa, supra,* 360 Md. at 178, 757 A.2d 118.

## DISCUSSION

■ Generally, a municipal corporation owes a duty to persons lawfully using its public streets and sidewalks to make them reasonably safe for passage. *Pierce v. City of Baltimore,* 220 Md. 286, 290, 151 A.2d 915 (1959); *Haley v. Mayor & City Council of Baltimore,* 211 Md. 269, 273, 127 A.2d 371 (1956); *Town Com'rs of Centreville v. County Com'rs of Queen Anne's Co.,* 199 Md. 652, 656, 87 A.2d 599 (1952); *Birckhead v. Mayor & City Council of Baltimore,* 174 Md. 32, 37, 197 A. 615 (1938); *Hagerstown v. Hertzler,* 167 Md. 518, 521, 175 A. 447 (1934); *Baltimore v. Eagers,* 167 Md. 128, 136, 173 A. 56 (1934); *Keen v. City of Havre de Grace,* 93 Md. 34, 39, 48 A. 444 (1901). This duty is not absolute and the municipality is not an insurer of safe passage. *Weisner v. Mayor & Council of Rockville,* 245 Md. 225, 228, 225 A.2d 648 (1967) (quoting *E. Coast Lines v. M. & C.C. of Baltimore,* 190 Md. 256, 277, 58 A.2d 290 (1948)). If, however, a person is injured because a municipality failed to maintain its streets, and the municipality had actual or constructive notice of the dangerous condition that caused the injury, the municipality may be held liable in negligence. *Keen, supra,* 93 Md. at 39, 48 A. 444. *See also Neuenschwander v. Washington Suburban Sanitary Com.,* 187 Md. 67, 72, 48 A.2d 593 (1946); *Mayor and City Council of Baltimore v. Thompson,* 171 Md. 460, 468, 189 A. 822 (1937); *Eagers, supra,* 167 Md. at 136, 173 A. 56.

*Keen, supra,* was a suit to recover damages for an injury alleged to have been caused by a hole in a city sidewalk. At trial, the circuit court granted a directed verdict in favor of the city. The Court of Appeals reversed, holding that evi-

dence that the hole had pre-existed the plaintiff's injury for enough time so as to have made it a matter of common knowledge to the townspeople was sufficient to support a reasonable finding of constructive notice. *Id.* at 38, 48 A. 444.

*Keen* provides the language cited, in part, by the parties here, and often repeated in subsequent cases:

> It was the duty of the city ... to keep the streets in repair and in suitable condition for public travel, and any person suffering damage or injury, without any fault on his part from a neglect of this duty, has a cause of action against the city. Before the city can be made liable in any case, it must be shown that it had notice of the bad condition of the street. This notice can be either express or constructive. By constructive notice is meant such notice as the law imputes from the circumstances of the case. It is the duty of the municipal authorities to exercise an active vigilance over the streets; to see if they are kept in a reasonably safe condition for public travel. They cannot fold their arms and shut their eyes and say they have no notice. After a street has been out of repair, so that the defect has become known and notorious to those traveling the streets, and there has been full opportunity for the municipality through its agents charged with that duty, to learn of its existence and repair it, the law imputes to it notice and charges it with negligence. If the defect be of such a character as not to be readily observable, express notice to the municipality must be shown.

*Id.* at 39, 48 A. 444 (citing *Todd v. City of Troy,* 61 N.Y. 506 (1875)). *See also Weisner v. Mayor & Council of Rockville,* 245 Md. 225, 225 A.2d 648 (1967) (holding that evidence that a thin sheet of ice had formed on the sidewalk due to melting and refreezing water from recently plowed snowbanks did not allow a finding of constructive notice against the municipality); *President & Comm'rs v. Kelly,* 200 Md. 268, 89 A.2d 594 (1952) (holding that evidence that a defect in the sidewalk was well known to neighbors and town authorities was sufficient to support a finding of constructive notice); *Baltimore v. Poe,* 161 Md. 334, 156 A. 888 (1931) (holding that evidence that a

defect in a street had existed for an entire summer was sufficient to support a finding of constructive notice); *Annapolis v. Stallings,* 125 Md. 343, 93 A. 974 (1915) (holding that evidence that defect in a city sidewalk had been observed by witnesses for several months was sufficient to prove constructive notice); *Commissioners of Delmar v. Venables,* 125 Md. 471, 94 A. 89 (1915) (holding that evidence that a stump six or seven inches above road level had been present for approximately two years was sufficient to support a finding of constructive notice against the principality).

In the case at bar, the appellants concede that the City did not have actual knowledge of the misalignment of the pedestrian crossing signal at Fayette and Caroline Streets. They further concede that there was no evidence as to how, or when, the pedestrian crossing signal had become askew. They argue, however, that, because it was known to the City that pedestrian crossing signals sometimes become misaligned, the City was obligated to conduct routine inspections in an effort to discover those defects; and, in the absence of such inspections, the City should be deemed to have constructive knowledge of the defects. In advancing this argument, the appellants rely on a portion of the excerpt from *Keen,* quoted above, that

[i]t is the duty of the municipal authorities to exercise an active vigilance over the streets; to see if they are kept in a reasonably safe condition for public travel. They cannot fold their arms and shut their eyes and say they have no notice.

*Keen, supra,* 93 Md. at 39, 48 A. 444.

This language cannot be read out of context; and when read in context does not impose a duty on municipalities to conduct regular inspections of their roadways. Rather, the language explains the circumstances in which municipalities will be found to be on constructive notice of defects in their roadways, and the rationale underlying the concept of constructive notice.

■ Because a municipality has a duty to keep its roads in proper condition, it must perform repairs upon being notified of a "bad condition of the street." *Keen, supra,* 93 Md. at 39, 48 A. 444. Whether the municipality performs routine inspections or relies on citizens' reports to discover "bad conditions," it cannot avoid notice by turning a blind eye; therefore, when the evidence shows that a "bad condition" is such that, by virtue of its nature or the length of time it has existed, the municipality would have learned of it by the exercise of due care, the municipality may be found to have constructive knowledge of its existence.

■ In this case, the nature of the defect—a misaligned pedestrian crossing signal—was not such that one reasonably could infer from its mere existence that citizens would have immediately reported it to the City authorities. Moreover, there was no direct or circumstantial evidence showing that the defect had existed for a sufficient length of time that it would have been reported to City authorities, and therefore would have been known to the City, had the City been abiding by its practice of responding to citizen reports of adverse roadway conditions. Had there been evidence of that sort, the issue of constructive notice properly would have been for the fact-finder, precluding summary judgment. There simply was no such evidence. And evidence that the City did not conduct roadway inspections but instead relied on citizen reports to learn of roadway defects, and that certain of its employee knew that pedestrian crossing signals sometimes become misaligned, was legally insufficient to support a finding that the City had constructive notice before Mr. Holland's traffic accident that the pedestrian crossing signal in question had become misaligned.

Accordingly, the circuit court's decision to grant summary judgment in favor of the City was not legally incorrect.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY THE APPELLANT.**