# THE MAYOR, COUNSELLOR AND ALDIEllMEN OF THE CITY OF ANNAPOLIS,

*vs.*

## SUSIE B. STALLINGS.

*Municipal corporations: liability for the condition of the
streets; notice; negligence. Sidewalks: rights of
the people; duty of.*

Where a municipal corporation is empowered by its charter
to prevent and remove nuisances, to pave and keep the streets
in repair, and to levy taxes therefor, the exercise of such power
is not merely discretionary, but is *imperative;* and in such cases,
it is the duty of the municipality not only to pass the necessary
ordinances, but to be vigilant and prompt in their enforce-
ment. p. 345

But before a municipality can be made liable for injuries
arising from the bad condition of its streets, it must be shown
that it had actual or constructive notice of such bad condition.
p. 346

If the defect is of such a character as not to be readily observ-
able, express notice to the municipality must be shown p. 347

But if it be one which the proper officers had notice of, or
by the exercise of reasonable care and diligence might have
had knowledge of, in time to have it remedied, so as to prevent
the injury complained of, then the liability of the municipality
attaches. p. 347

Where a municipality is negligent in enforcing such an ordi-
nance, it can not rely upon the ordinance as a defense. p. 349

The streets and sidewalks of a city are for the benefit of all
conditions of people, and all have a right, in using them, to

assume that they are in an ordinarily good condition, and to regulate their conduct upon that assumption.              p. 351

A person using a sidewalk, where there are no obvious obstructions, is required to use only ordinary care.              p. 351

*Decided February 11th, 1915.*

Appeal from the Circuit Court for Baltimore County. (DUNCAN, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, THOMAS, URNER, STOCKBRIDGE, and CONSTABLE, JJ.

*Ridgely P. Melvin* and *T. Scott Offutt,* for the appellant.

*Robert Moss* and *Elmer J. Cook,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The appeal in this case is from a judgment entered in the Circuit Court for Baltimore County in a suit for personal injuries brought by the appellee, Susie B. Stallings, against the appellant, The Mayor, Counsellor and Aldermen of the City of Annapolis. The declaration upon which the case was tried contained two counts. The first count charged that one of the sidewalks on West street, in the City of Annapolis, was negligently suffered by the defendant to be out of repair and unsafe for travel, "whereby the plaintiff in traveling said street and using due care fell into a hole in said street, and her hip was severely injured, which injury is permanent." The second count charged that one of the sidewalks on West street, in the City of Annapolis, at a point opposite a dwelling owned by Abram P. McCombs, "was permitted to remain for a long period of time out of repair, with a large and dangerous hole in the centre of the same, and in an unsafe and dangerous condition for persons traveling upon it, and permitted to remain in said condition for a long pe-

riod of time, to wit, six months," and that on the 13th of July, 1910, the plaintiff, while traveling over said sidewalk and using due care, fell into the hole in said sidewalk and injured, sprained and wounded her right hip, which injuries are permanent.

The appellant is a municipal corporation, and is empowered by its charter to prevent and remove nuisances; to levy and collect taxes, not exceeding one per centum per annum on all the assessable property in the city; to pass ordinances for paving and keeping in repair the streets, lanes and alleys in said city; and in addition to these powers it is granted the further power to tax any particular part or district of the city for paving the streets, lanes and alleys therein in a sum not exceeding one per centum on the assessable property in said particular part or district. It is provided by sections 14 and 15 of Article 38 of the City Code of Annapolis as follows: "Section 14—The City Commissioner shall give twenty days' notice to the owners of all property binding on which there are paved footways requiring repairs, to have the same repaired in a suitable manner, and if they shall neglect to do so within the time specified, they shall be liable to a fine of five dollars, to be recovered as in other cases." "Section 15—If owners of property, to whom notice shall be given, as provided for in either of the two preceding sections, shall refuse to pave or repair their pavement, the City Commissioner shall cause the work to be done in a suitable manner, and the Counsellor of the city shall institute proceedings to recover the cost thereof, under the powers derived from the charter of the city."

In *Baltimore* v. *Pendleton,* 15 Md. 12, in which the plaintiff recovered a judgment for an injury to his horse, occasioned by the digging of a trench or hole in one of the streets of the city into which the horse fell and was thereby crippled, the Court said: "In *Balto.* v. *Marriott,* 9 Md. 174, in commenting on the clause in the charter of the City of Baltimore, which provides that the corporation 'shall have full

power and authority to enact and pass all laws and ordinances necessary to preserve the health of the city, and to *prevent nuisances;* the Court declared it to be 'a well-settled principle, that when a statute confers a power upon a corporation, to be exercised for the public good, the exercise of the power *is not merely discretionary, but imperative,* and the words 'power and authority,' in such case, may be construed *duty and obligation.'* And in accordance with this doctrine which was sustained both by reason and authority in that case, the corporation was held liable for an injury occasioned by a person falling on the ice which was allowed to accumulate on the pavement. The same principle applies to the case now before us."

It was the duty of the defendant to have been prompt and vigilant in enforcing the provisions of the ordinance mentioned. "To pass an ordinance, and not enforce it, would be the same as if none had been passed, so far as the public interests were concerned." *Marriott's Case, supra.*

The general principles of law applicable to a case of this kind are fully stated in *Keen* v. *Havre de Grace,* 93 Md. 34. In that case the plaintiff, while walking along the sidewalk of one of the streets of Havre de Grace on a dark night fell into a hole and was injured. In declaring the obligations and liabilities of the city the Court said: "It is not questioned that the city of Havre de Grace has power to grade and repair its streets and sidewalks (Act 1890, Ch. 180) ; and when such is the case, the municipality is bound to maintain them in safe condition, and if it negligently fail so to do and thereby persons, acting without negligence on their part, are injured, it is liable to respond in damages for all injuries caused by its neglect. *M. & C. C. of Balto.* v. *Marriott,* 9 Md. 160; *Pendleton's Case,* 15 Md. 17. Before, however, the municipality can be made liable in any case, it must be shown that it had actual or constructive notice of the bad condition of the street. As was well said in the case of *Todd* v. *City of Troy,* 61 N. Y. 509: 'By constructive notice is meant such notice as the law imputes from the circumstances of the

case. It is the duty of the municipal authorities to exercise an active vigilance over the streets; to see they are kept in a reasonably safe condition for public travel. They cannot fold their arms and shut their eyes and say they have no notice. After a street has been out of repair, so that the defect has become known and notorious to those traveling the street, and there has been full opportunity for the municipality through its agents charged with that duty, to learn of its existence and repair it, the law imputes to it notice and charges it with negligence.' If the defect be of such a character as not to be readily observable, express notice to the municipality must be shown. *Burns* v. *Bradford City,* 137 Pa. St. 367; *Cook* v. *The City of Anamosa,* 66 Iowa, 430. But if it be one which the proper officers either had knowledge of, or by the exercise of reasonable care and diligence might have had knowledge of, in time to have remedied it, so as to prevent the injury complained of, then the municipality is liable. *Stanton* v. *Salem,* 145 Mass. 479; *Gschwend* v. *Millvale Borough,* 159 Pa. St. 257; *City of Atlanta* v. *Purdue,* 53 Ga. 607.

If therefore the evidence in this case shows that there was a defect in the sidewalk, of which the city had knowledge, or by the exercise of reasonable diligence ought to have known, and the plaintiff, while exercising proper care, stepped into the hole and was thereby injured, the municipality would be liable for such damages as ensued."

The general purport and effect of the testimony contained in the record will now be considered in the light of these principles. The plaintiff, a married woman about fifty-two years of age, and in good health, lived with her husband and daughter at 189 West street, one of the public streets of the City of Annapolis. The adjoining house—191 West street —was occupied by a family named Spriggs. On the night of July 13, 1910, about nine o'clock, Virgil B. Stallings, the husband of the plaintiff, was sitting on a chair on the pavement in front of his house, and called to the plaintiff, who was in the house, to come out and watch the flickering

·of the street lamps.  The plaintiff came out and after observing the lights, and, seeing Agnes Spriggs in the doorway of the adjoining house, started to walk over to her to borrow an evening paper.  As she was walking on the sidewalk she ·stated she saw some obstruction in the street, but what this ·obstruction was is not shown by the evidence.  She testified that she walked between the obstruction and the house, and to quote her own language, "the bricks under me gave in and threw me."  Virgil B. Stallings testified that ·he heard his wife scream a few minutes after she left him, and he said: "I run across the street, up the pavement, and I found her lying down across the pavement, unconscious.  Mrs. Spriggs was there with me at the same time, and I tried to get her ·up, but I could not, and I found that she had this foot (indicating) down in the pavement where she put her foot on ·the bricks and had gone through with her, and the bricks tore her ankle, and I took the bricks from around her ankle and took her out of the hole.  Mrs. Spriggs and my daughter and me picked her up bodily and carried her in the house. There she laid until morning, the next morning.  She was unconscious until the next morning, and then we sent for the doctor, and the doctor came as soon as I took her off the pavement."  Agnes Spriggs testified she heard the plaintiff scream and that Mr. Stallings and herself reached her about the same time, and that the plaintiff was in the hole.  The ·evidence shows that the plaintiff sustained a painful and serious injury to her hip by the fall, and evidence was ·offered tending to prove that the injury is permanent.

A number of witnesses testified as to the character and extent of the defect in the pavement.  It was caused by the bricks becoming loose, and the children of the neighborhood digging the sand out to an extent that created a considerable hole in the sidewalk and rendered it dangerous to pedestrians.  There is evidence to the effect that this hole remained in the sidewalk from March or April, 1910, until sometime .after the accident and was readily observable· by persons ¬using the street and residing in the neighborhood.  The

plaintiff testified that she had never been on this pavement. until the night she was injured, and that she was unfamiliar with the sidewalk, and did not know of its defective condition. The street was rather dimly lighted at the time, and we do not find in the testimony of the plaintiff or in the other evidence and circumstances any such prominent and decisive act of negligence on the part of the plaintiff as would justify the Court in holding as a matter of law that she was guilty of contributory negligence. That, we think, was a question for the jury. There is ample evidence in the record from which the jury might have reasonably concluded that the defendant by the exercise of reasonable diligence would have known of the existence of this defect and to have repaired it, or caused it to be repaired by the owner before the plaintiff was injured. If it was negligent in enforcing the ordinance it cannot rely upon the ordinance as a defence.

At the conclusion of the whole case the plaintiff submitted two prayers as follows:

· 1. "If the jury find from the evidence in the case that a hole in the middle of the sidewalk on the south side of West street in the City of Annapolis, Maryland, in front of dwelling Number 191, had been permitted to remain in said sidewalk in such manner as greatly to obstruct, inconvenience and endanger the public in walking along over said sidewalk, and if the jury further find that the said hole could have been repaired by the use of proper care and diligence on the part of the defendant or its proper agents appointed for that purpose; and if the jury further find from the evidence, that the defendant and its proper agents aforesaid, had notice, or might by care and diligence have obtained notice of said hole in said sidewalk as aforesaid a sufficient time to have repaired it before the occurrence of the injury complained of, then it was the duty of the said defendant or its agents to have repaired the said hole in said sidewalk in a reasonable time after notice thereof, or after they might have obtained notice thereof by the use of ordinary care and diligence, and if the jury further find that the plaintiff while walking along said

sidewalk exercising that degree of care, which a reasonable
prudent person should under similar circumstances, fell into
said hole in said sidewalk and thereby received the injury
complained of and that such injury occurred after the lapse
of a sufficient time from the notice of said hole in said side-
walk to the said defendants, or its agents or from the period
when the defendants or its agents might have obtained notice
thereof by the exercise of ordinary care and diligence, then
the plaintiff is entitled to recover."

2. "If the jury find for the plaintiff they are to consider
in estimating damages the health and condition of the plain-
tiff before the injuries complained of as compared with her
present condition in consequence of said injury, and whether
said injury is in its nature permanent; also the physical and
mental suffering to which she has been subjected by reason
of said injury, and they are to allow her such damages as in
the opinion of the jury will be fair and just compensation
for the injury which the plaintiff has sustained."

The defendant specially excepted to the granting of the
first prayer upon the ground that there was no legally suffi-
cient evidence to show that the plaintiff fell into the hole,
and to the second prayer that there was no legally sufficient
evidence to show that the plaintiff's injury was permanent.
As the evidence in our opinion tended to support both hypoth-
eses of fact, the Court committed no error in overruling the
exceptions.    The plaintiff's first prayer is based upon the
principles of law applicable to a case of this kind as declared
in the cases cited above.    The plaintiff's second prayer was
the usual and approved prayer on the measure of damages in
cases in which permanent injuries have been sustained.    The
first prayer of the plaintiff was granted in connection with
the sixth and seventh granted prayers of the defendant, which
submitted to the jury the question of contributory negligence.
The defendant's first, second, third, eighth, tenth and eleventh
prayers sought to withdraw the case from the jury and were
properly refused.    By the defendant's fourth prayer the
Court was asked to instruct the jury that if the defect was

for the *first time* discovered on June 27, 1910, "by any agent, servant or officer of the defendant, and on the same day the defendant sent a notice of such defect to the owner of the abutting land requiring him to repair such break, and that the accident complained of occurred within twenty days from the sending of such notice, then the jury must find their verdict for the defendant." This prayer ignores the evidence which tended to show that the defendant might have discovered the defect by the exercise of ordinary diligence long before the date mentioned in the prayer, and makes the defendant's liability depend upon *actual knowledge,* for the first time then acquired. It ignored the question of imputed notice and was properly refused. The defendant's fifth prayer is defective for the same reason, and in ignoring the question of the neglect of the defendant in not properly enforcing the ordinance, and there was no error in rejecting it. The ninth prayer asserted that the plaintiff was bound to exercise an extraordinary degree of care in using the street. The streets and sidewalks of the city are for the benefit of all conditions of people; "and all have a right, in using them, to assume that they are in an ordinarily good condition, and to regulate their conduct upon that assumption. A person may walk or drive carefully in the darkness of the night, relying upon the belief that the corporation has performed its duty, and that the street or walk is not in an unsafe condition." 4 *Dillon on Munic. Corp.,* 5th Ed., sec. 698. The plaintiff was required under the circumstances in using the sidewalk to exercise only ordinary care. 2 *Shearman & Redfield on Negligence,* sec. 376; *County Commissioners* v. *Mandanyohl,* 93 Md. 152; *Anne Arundel Co.* v. *Carr,* 111 Md. 152.

We do not deem it of sufficient importance to discuss separately the exceptions to the testimony. We have examined these exceptions carefully, and we find no reversible error in any of them.

The judgment appealed from will accordingly be affirmed.

> *Judgment affirmed, the appellant to pay the* costs.