BRENDA COLBERT v. MAYOR AND CITY COUNCIL OF BALTIMORE, No. 1610, Sept. Term 2016

**HEADNOTE:**

**Negligence – Duty – Actual Notice – Constructive Notice – Res Ipsa Loquitur**

Notwithstanding evidence of complaints regarding leaks in water lines in close proximity to Colbert's home, and that Baltimore City had trouble keeping up with maintenance projects, there was no evidence that the City had actual or constructive notice of a defective condition in the water main on Elmley Avenue that ruptured on February 20, 2015.  There was no evidence to suggest that the ruptured water main was a casualty that usually does not occur in the absence of negligence. As a result, the trial court did not err in determining that the doctrine of res ipsa loquitur did not apply in this case.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1610

September Term, 2016

BRENDA COLBERT

v.

MAYOR AND CITY COUNCIL OF
BALTIMORE

Nazarian,
Shaw Geter,
Eyler, James R.
  (Senior Judge, Specially Assigned),

JJ.

Opinion by Eyler, James R., J.

Filed:  February 2, 2018

In a negligence suit against a municipality based on a failure to properly maintain its public facilities, it is reasonably well settled that a plaintiff must produce some evidence that the municipality knew or should have known of the alleged defect that caused damage. In this case, involving a rupture of a buried water main line, the question is whether evidence of water leaks generally and a failure to adequately maintain an aging water system is enough to create a jury question with respect to a buried water line that ruptures, either because it is sufficient to give rise to an inference of a specific act of negligence or it is sufficient to invoke res ipsa loquitur. We conclude that the evidence is legally insufficient to create a jury question.

The Circuit Court for Baltimore City entered summary judgment in favor of the Mayor and City Council of Baltimore ("the City"), the appellee, in a negligence suit brought against it by Brenda Colbert, appellant. In February 2015, an underground water main ruptured in close proximity to appellant's residence, causing flooding in her home. Appellant notified the City, which denied liability. In her complaint, appellant alleged that the City negligently failed to properly maintain the water main. In this timely appeal, appellant contends that the circuit court's grant of summary judgment was legally incorrect. She presents the following issues for our consideration:

> 1) Whether the circuit court erred by finding no dispute of material fact existed as to whether the City had actual knowledge of the defective condition of the water main;
>
> 2) Whether the circuit court erred in determining that no dispute of material fact existed as to whether the City had constructive knowledge of the defective condition of the water main; and,

3) Whether the circuit court erred in determining that the doctrine of res ipsa loquitur was inapplicable to this case.

For the reasons set forth below, we shall affirm the judgment of the circuit court.

**FACTUAL BACKGROUND**

The parties do not dispute that, on February 20, 2015, an 8-inch cast iron water main line that, in 1939, was buried beneath Elmley Avenue in Baltimore City, ruptured and caused water to flood the basement of appellant's house, which was located at 3544 Elmley Avenue. Appellant notified the City of her claim pursuant to the Local Government Tort Claims Act, Md. Code (2013 Repl. Vol.), § 5-304 of the Courts and Judicial Proceedings Article ("CJP"). The City denied her claim. Subsequently, appellant filed a negligence action in the circuit court. In her amended complaint, appellant alleged that the City had breached its duty to maintain its water mains and protect her from resulting damages. Specifically, she alleged that the City was aware that its water system was "quite old," that it had suffered years of neglect, that there was an increase in "non-seasonal breaks," and that "'an out-of-sight, out-of-mind attitude has left [the City] with far too many crumbling water lines.'"

The City filed a motion for summary judgment on the ground that there was no evidence that, prior to the break, it had either actual or constructive notice of a defective condition in the water main beneath Elmley Avenue. The City argued that "any defect with the water main was not of a 'nature' that [it] would have learned of its existence prior to the water main break because the water main was buried beneath the street." In support of its motion, the City provided an affidavit from its designated representative,

2

Arthur Shapiro, the chief of the office of engineering and construction at the Department of Public Works and a map from the Department of Public Works depicting the water main in question. In his affidavit, Mr. Shapiro averred that the City had no knowledge of a defective condition in the eight inch cast iron water main on Elmley Avenue prior to the water main break on February 20, 2015.

Appellant opposed the motion for summary judgment, arguing that whether the City knew or should have known of the defective condition of the water main was a question for the jury. Appellant relied on data sheets, investigative reports, and work orders dating from 2014 to the time of the break that showed a number of "incidents and water leaks," including water leaks on Elmley Avenue on November 10, 2014, and January 5, 13, and 23, 2015. The documents indicate that the incidents included complaints of water in basements and a leaking water meter. It appears from the documents that the leaks were remedied. There is no evidence that the leaks were from the main line. Appellant also directed the court's attention to statements on the Department of Public Works' webpage acknowledging that the City had "noticed an increase in non-seasonal breaks," that "many [water mains] are not in a serviceable state," and that "[y]ears of an out-of-sight, out-of-mind attitude has left us with far too many crumbling water lines." In addition, appellant referenced newspaper articles in which the City acknowledged that it was replacing only five miles or less of pipe per year, that the replacement efforts were "far short of what's needed," and that the City had not been keeping up "with the maintenance that's needed over the past 40 to 50 years." Acknowledging that she had no evidence of knowledge of a defect in the main line,

3

appellant argued that water leaks generally were "symptomatic of a broader problem" from which a trier of fact could "infer that the City had notice that there were problems with the main itself."

In the alternative, appellant argued that the doctrine of res ipsa loquitur applied and thus, even if the City did not have actual or constructive knowledge of the water main's specific condition, a genuine dispute of material fact existed as to whether such a break would ordinarily not occur in the absence of negligence.

The City filed a reply to appellant's opposition and attached excerpts and exhibits from the deposition of Mr. Shapiro.

After a hearing on September 6, 2016, the court concluded that the doctrine of res ipsa loquitur was not applicable. The court also concluded that there was no evidence in the record to support appellant's argument that leaks in the City's water lines and the general need for maintenance "were symptomatic of a larger problem[.]" The court concluded that appellant failed to establish through facts admissible in evidence that the City had actual or constructive notice of a defect in the water main prior to the rupture on February 20, 2015.

## STANDARD OF REVIEW

A circuit court may grant a motion for summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(f). We review a circuit court's decision to grant summary judgment without deference, by independently examining the record to determine whether the parties

4

generated a genuine dispute of material fact and, if not, whether the moving party was entitled to judgment as a matter of law. *Rowhouses, Inc. v. Smith*, 446 Md. 611, 630 (2016). We consider the record "'in the light most favorable to the non-moving party,'" drawing any reasonable inferences against the moving party. *Id.* at 631 (quoting *Hamilton v. Kirson*, 439 Md. 501, 522 (2014)).

## DISCUSSION

### I.

Appellant contends that the circuit court erred in finding that there was no dispute of material fact as to whether the City had actual or constructive knowledge of the defective condition of the subject water main. We disagree. Because appellant relies on the same evidence to support her arguments of actual and constructive notice, we will address both issues at the same time.

As a general rule, a municipality has a duty to maintain its public works in good condition. *Smith v. City of Baltimore*, 156 Md. App. 377, 383 (2004). That duty is not absolute, however, and the municipality is not an insurer. *Id.* If an entity is injured because the municipality failed to maintain its public works and the municipality had actual or constructive notice of the bad condition that caused the damage, the municipality may be held liable in negligence. *Id.* Thus, in order for the City to be held liable for negligence, appellant was required to show that it had actual or constructive notice.

Actual notice has been defined as "knowledge on the part of the corporation, acquired either by personal observation or by communication from third persons, of that

5

condition of things which is alleged to constitute the defect." McQuillin, THE LAW OF MUNICIPAL CORPORATIONS, § 54:176 (3rd ed., July 2017 update).

Constructive notice is notice that the law imputes based on the circumstances of the case. *City of Annapolis v. Stallings*, 125 Md. 343, 93 A. 974, 976 (1915). "A municipality is charged with constructive notice when the evidence shows that – as a result of the 'nature' of a defective condition or the 'length of time it has existed' – the municipality would have learned of its existence by exercising reasonable care." *Hartford Cas. Ins. Co. v. City of Baltimore*, 418 F.Supp.2d 790,793 (D.Md. 2006)(quoting *Smith*, 156 Md. App. at 386).

Appellant challenges the circuit court's reliance on Mr. Shapiro's affidavit, in which he averred that the City had no knowledge of a defective condition in the water main. Appellant explains that Mr. Shapiro was "entirely unfamiliar with the City's own information sheet expressly mapping the condition of the water main[.]" Appellant argues that the circuit court improperly weighed the evidence, determined Mr. Shapiro's credibility, discounted the documents she provided, ignored "the City's own admissions as to its neglect of the City's water main," and ignored the three prior complaints in close proximity to her home. According to appellant, the circuit court's ruling "effectively absolves the City of any responsibility for maintenance of its water mains" because "the City operates on a complaint-driven and purely reactionary maintenance system for water mains[.]" In support of her arguments, Colbert relies on *Keen v. City of Havre de Grace*, 93 Md. 34, 48 A. 444, 445 (1901), in which the Court of Appeals cautioned that "[i]t is

6

the duty of the municipal authorities to exercise an active vigilance over the streets . . . [t]hey cannot fold their arms and shut their eyes and say they have no notice."

Appellant failed to present any evidence to dispute Mr. Shapiro's testimony that the City had no actual knowledge of a defective condition in the water main. Even though, before the leak in question, there were complaints of leaks in close proximity to appellant's home, and accepting that the City had trouble keeping up with needed maintenance projects, the evidence fell short of establishing that the City had actual or constructive notice that there was a defective condition in the water main in question.

Appellant relied upon the age of the water main, newspaper articles, a screenshot of the Department of Public Works' webpage, and the City's repair records for the area close to her property to support her contention that the City knew that its water system was old and in need of repair, that defective water mains were widespread throughout the City, and that there were multiple water leaks in the months leading up to the break in the subject water main. There was no evidence presented, however, to counter Mr. Shapiro's deposition testimony that the "longevity" of the subject water main pipe, which was installed in 1939, "is upwards of 120 years." Nor was there anything in the City's service records to link prior repairs or prior leaks to a defect in the subject water main. In addition, the nature of the defect in the water main was not readily observable because it was buried beneath the street. In short, there was no admissible evidence to suggest that the City should have learned of a defective condition in the subject water main by exercising reasonable care. As a result, the circuit court did not err in concluding that the

7

City did not have actual or constructive notice of a defect in the water main prior to the break.

## II.

Appellant also contends that the circuit court erred in declining to apply the doctrine of res ipsa loquitur. We disagree and explain.

Ordinarily, in an action for negligence, a plaintiff must present evidence tending to show that the defendant was legally responsible for his or her injury because that injury might have been caused by something other than the defendant's negligence. *Chesapeake & Potomac Tele. Co. of Maryland v. Hicks*, 25 Md. App. 503, 511 (1975). Direct proof of negligence, however, is not required. A plaintiff may instead invoke the doctrine of res ipsa loquitur to "rely on the inference of negligence to be deduced from all the circumstances." *Hickory Transfer Co. v. Nezbed*, 202 Md. 253, 262 (1953). The doctrine "allows a plaintiff the opportunity to establish a *prima facie* case 'when he could not otherwise satisfy the traditional requirements for proof of negligence.'" *Dover Elevator Co. v. Swann*, 334 Md. 231, 236 (1994)(quoting *Pahanish v. Western Trails, Inc.*, 69 Md. App. 342, 359 (1986)). The doctrine applies when "the instrumentality causing injury is in the exclusive control of the defendant, and it is assumed he is in the best position to explain how the accident happened." *Peterson v. Underwood*, 258 Md. 9, 19 (1970)(citation omitted). The Court of Appeals described what a plaintiff must establish to rely on the doctrine as follows:

> To invoke successfully the doctrine [of res ipsa loquitur], the plaintiff must establish that the accident was "(1) of a kind that does not ordinarily occur absent negligence, (2) that was caused by an instrumentality exclusively in

8

the defendant's control, and (3) that was not caused by an act or omission of the plaintiff."

*District of Columbia v. Singleton*, 425 Md. 398, 408 (2012)(quoting *Holzhauer v. Saks & Co.*, 346 Md. 328, 335-36 (1997)).

A plaintiff must establish each of the three elements of the doctrine by a preponderance of the evidence. *Hicks*, 25 Md. App. at 527-33. When the three elements are satisfied, the doctrine permits, but does not compel, the jury "to infer a defendant's negligence without the aid of any direct evidence. Even when the doctrine applies, however, the burden of proving the defendant's negligence remains upon the plaintiff." *Dover Elevator Co.*, 334 Md. at 236 (citations omitted).

Appellant argues that her property sustained damage as the result of a break in a water main that was in the City's exclusive control. She asserts that the main would not have broken in the absence of negligence, that "maintained pipes do not suddenly break," that the City was the "only entity with knowledge of the water main installation, maintenance, and condition," and that the City "is singularly in control" of repairs and inspections of the water main pipes. In support of her argument that the doctrine of res ipsa loquitur applies to her case, appellant directs our attention to *Pacific Northwest Bell Tel. Co. v. Port of Seattle*, 491 P.2d 1037 (Wash. 1972). In that case, a water pipe that formed part of a fire protection system for the Port of Seattle broke, causing water to run into the telephone company's manhole and damage exposed wires. *Id*. at 1037. The trial court instructed the jury on the doctrine of res ipsa loquitur and the jury returned a verdict for the Port of Seattle. *Id.* at 1038. Subsequently, the trial court granted the telephone

9

company's motion for judgment notwithstanding the verdict on the ground that the doctrine of strict liability was applicable. *Id*. On appeal, the Supreme Court of Washington held that the principle of liability without fault did not apply, but the doctrine of res ipsa loquitur did. *Id.* at 1039. The Supreme Court held that the telephone company was entitled to an instruction on res ipsa loquitur, explaining:

> We have here a harm which occurred to plaintiff without any fault on its part. The water pipe system, even though placed where it customarily and rightfully may be, nevertheless was buried beyond practical inspection and maintenance. Under these circumstances, the plaintiff is certainly entitled to the presumptions carried by the res ipsa instruction and defendant should be obligated to prove its freedom from negligence. Defendant met this burden to the satisfaction of the jury.

*Id.* at 1041.

In *Hartford Casualty Ins. Co. v. City of Baltimore*, 418 F.Supp.2d 790 (D.Md 2006), the United States District Court, applying Maryland law, considered and rejected the approach taken in the *Pacific Northwest Bell Tel. Co.* case. *Hartford Casualty* involved a water main buried beneath a Baltimore City street. *Id.* at 791. The water main was between 93 and 99 years old, had an average useful life of 120 years, and had no history of prior breaks. *Id.* at 792. On January 4, 2004, the main ruptured and caused flooding in a nearby property that was insured by Hartford Casualty Insurance Company. *Id.* at 791. The United States District Court determined that Baltimore City did not have actual notice of a defect in the water main. *Id.* at 793. It also concluded that the City did not have constructive notice, stating that a reasonable jury could not find "that the 'nature' of the defective water main or the 'length of time it [ ] existed' would have led

10

the City to discover this condition." *Id.* The court specifically addressed the decision in

*Pacific Northwest Bell Tel. Co.* to apply the doctrine of res ipsa loquitur and rejected that

approach, stating:

> "[I]n order for the doctrine of *res ipsa loquitur* to be applicable, plaintiff
> must prove, by a preponderance of the evidence … [a] casualty of a sort
> that usually does not occur on the part of someone…." *Vito v. Sargis &
> Jones, Ltd.*, 108 Md. App. 408, 672 A.2d 129, 134 (1996), [*aff'd sub nom*,
> *Cogan Kibler, Inc. v. Vito*, 346 Md. 200 (1997)]. In this case, however, the
> parties have forecast no evidence to suggest that a ruptured water main
> some 93-99 years old is a casualty that usually does not occur in the
> absence of negligence. *See I.M. of Atlantic City v. Dist. of Columbia*, 356
> F.Supp. 487, 491 (D.D.C. 1973)("A municipality is not an insurer against
> damages from broken water mains but must be held only to the same
> standard of 'due care' applicable to individuals and other corporations.").

*Id.* at 794 n. 2.

We find the reasoning in *Hartford Casualty* to be sound and to reflect Maryland

law. In the case at hand, there was no evidence to suggest that the ruptured water main

was a casualty that usually does not occur in the absence of negligence. As a result, the

court did not err in concluding that the doctrine of res ipsa loquitur did not apply.

 

**JUDGMENT OF THE CIRCUIT COURT
FOR BALTIMORE CITY AFFIRMED;
COSTS TO BE PAID BY APPELLANT.**

11